IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-702-D

| | |
|---|---|
| MARY ANN GRANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NORTH CAROLINA DEPARTMENT ) | |
| OF TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

On December 7, 2023, Mary Ann Grant ("Grant" or "plaintiff") filed this action against the North Carolina Department of Transportation ("NCDOT" or "defendant") [D.E. 1]. On December 15, 2023, Grant filed an amended complaint [D.E. 4]. Grant alleges that NCDOT violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, et seq., including (1) discrimination, (2) retaliation, and (3) a hostile work environment. See [D.E. 4] ¶¶ 24–45. On January 8, 2024, NCDOT moved to dismiss the amended complaint [D.E. 7] and filed a memorandum in support [D.E. 8]. See Fed. R. Civ. P. 12(b)(6). On February 26, 2024, Grant responded in opposition [D.E. 12]. On March 7, 2024, Grant amended her response in opposition [D.E. 13]. As explained below, the court grants in part and denies in part NCDOT's motion to dismiss. Grant may proceed with her ADEA retaliation claim.

I.

Grant is over 40 years old. See Am. Compl. [D.E. 4] ¶ 17. She works as an administrative specialist for the North Carolina Department of Motor Vehicles in Nash County ("NCDMV"). See id. at ¶¶ 1, 6, 9. She received favorable performance reviews. See id. at ¶ 19. She also received

accolades for her work from the Lieutenant Governor of North Carolina, the North Carolina Secretary of State, NCDMV Commissioner Goodwin, and former NCDMV Commissioner Jessup. See id. at ¶ 9. She has no disciplinary record. See id. at ¶ 19.

In November 2021, Grant noticed that someone started unlocking, opening, and leaving open a locked filing cabinet drawer with confidential business information in her office. See id. at ¶ 11. She also noticed the filing cabinet lock was broken. See id. She reported the broken lock and suspicious activity to Portia Manley, Interim NCDMV Commissioner, and to security. See id. at ¶ 12. She also requested a new filing cabinet. See id. at ¶ 13.

On August 4, 2022, before leaving for a trip, Grant locked her filing cabinet. See id. at ¶ 14. On August 8, 2022, she returned to an open filing drawer. See id. Again, she reported the incident. See id.

On April 17, 2023, despite three lock replacements and an internal investigation that produced no evidence of tampering, Grant reported that someone opened and left open her desk drawer. See id. at ¶ 15; [D.E. 1-1] 1. She also reported a stolen stapler. See Am. Compl. ¶ 15. No one other than Grant had keys to the desk or filing cabinet. See [D.E. 1-1] 1.

On April 18, 2023, following her latest report of lock tampering, NCDOT referred Grant to the McLaughlin Young Group Employee Assistance Program for a mandatory fitness-for-duty evaluation. See id.; Am. Compl. ¶ 16. Furthermore, NCDOT Deputy Commissioner, Timothy Hayworth ("Hayworth"), placed Grant on mandatory investigatory leave. See Am. Compl. ¶ 18. Grant underwent the evaluation and received a return-to-work clearance for May 12, 2023. See id. at ¶ 20.

In response, Grant filed a charge with the Equal Employment Opportunity Commission ("EEOC"). See id. at ¶ 22. On September 8, 2023, the EEOC issued a right-to-sue notice. See id.

2

at ¶ 23. On December 7, 2023, Grant filed this action alleging three ADEA claims. See [D.E. 1] ¶ 9. She seeks damages, injunctive relief, attorney's fees, and costs. See Am. Compl. 11.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

3

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d, 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

In count one, Grant alleges an ADEA discrimination claim against NCDOT. See Am. Compl. ¶¶ 24–29. The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To survive a motion to dismiss, a plaintiff must plausibly allege "that age constituted the but-for cause of the adverse employment action." Bandy v. City of Salem, 59 F.4th 705, 710 (4th Cir. 2023); see Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009). Merely alleging that age was one of multiple motives for an employer's adverse employment action does not suffice. See Bandy, 59 F.4th at 710; Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019). Rather, the employee must plausibly allege "that the employer would not have taken

4

the adverse employment action in the absence of age discrimination." Bandy, 59 F.4th at 710 (cleaned up); see Gross, 557 U.S. at 177; Westmoreland, 924 F.3d at 725.

Even though an age discrimination plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973), to survive a motion to dismiss,[1] Swierkiewicz "left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of [her] claim." Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006) (cleaned up), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc); see McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). In order to state an age discrimination claim under the ADEA, Grant must plausibly allege that NCDOT took an adverse employment action against her because of her age. See 29 U.S.C. § 623(a)(1); Gross, 557 U.S. at 176; Bandy, 59 F.4th at 710.

A plaintiff may establish an ADEA claim in two ways. First, an employee may produce direct evidence showing that an employer took an adverse action because of an employee's age. See, e.g., Gross, 557 U.S. at 177–78; Bandy, 59 F.4th at 710; Westmoreland, 924 F.3d at 725; Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004), abrogated on other grounds by Gross, 557 U.S. 167. Grant's complaint does not allege direct evidence of age discrimination.

Second, an employee may proceed under the burden-shifting framework in McDonnell Douglas. See Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d at 334; Smith v. Flax, 618 F.2d 1062, 1066–67 (4th Cir. 1980). The McDonnell Douglas framework applies to age discrimination claims under the ADEA. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141–42 (2000); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Westmoreland, 924 F.3d at 725; Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

---

[1] See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–15 (2002).

5

The McDonnell Douglas framework includes three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216 (4th Cir. 2016).

To establish a prima facie case of age discrimination under McDonnell Douglas, Grant must plausibly allege that (1) she was in the age group protected by the ADEA; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) evidence adequate to create an inference that the employment decision was based on her age. See O'Connor, 517 U.S. at 312–13.

Grant plausibly alleges that NCDOT is her employer under the ADEA and that she is over 40 years old. See Am. Compl. ¶¶ 4–6, 17. The court assumes without deciding that Grant plausibly alleges the following adverse employment actions: (1) requiring Grant to miss approved North Carolina Performance Management Process courses on May 2, 2023, and May 3, 2023, (2) reducing her job responsibilities, including editing and viewing spreadsheets and handling out-of-state civil summons, (3) receiving poor treatment and additional supervision from Hayworth, (4) being "demoted" to report to other managers, (5) receiving additional assistance with her designated job assignments from three other employees, and (6) undergoing a fitness-for-duty evaluation. Id. at ¶¶ 17, 21; Muldrow v. City of St. Louis, 144 S. Ct. 967, 974 (2024) ("To make out [an ADEA] discrimination claim, a [plaintiff] must show some harm respecting an identifiable

6

term or condition of employment."). The court also assumes without deciding that Grant plausibly alleges that before these alleged adverse employment actions her performance evaluations have been favorable; her work record was free from any disciplinary actions, warnings, insubordination issues, and conflict issues; and she had received accolades for her work from North Carolina officials. See Am. Compl. ¶¶ 9, 19.

Even viewing the Grant's amended complaint in the light most favorable to her, Grant fails to plausibly allege any evidence adequate to create an inference that NCDOT took the challenged employment decisions because of her age. See O'Connor, 517 U.S. at 312–13. Grant fails to allege her own age or the age of any of her colleagues managing or assisting her. Simply alleging that you were over age 40 and your employer took adverse employment actions does not plausibly mean that your employer took the adverse action because of your age. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; O'Connor, 517 U.S. at 312–14; see also McCleary-Evans, 780 F.3d at 585–88; Gomez v. Haystax Tech., Inc., 292 F. Supp. 3d 676, 686–87 (E.D. Va. 2017), aff'd, 761 F. App'x 220 (4th Cir. 2019) (per curiam) (unpublished). Moreover, Grant alleges that NCDOT took the adverse employment actions against her "as a direct result of [her] complaints." Am. Compl. ¶ 28.e. Stated differently, Grant alleges that NCDOT took the adverse actions because she complained about the drawer. See id. at ¶¶ 28.e., 37. Thus, Grant fails to plausibly allege an ADEA discrimination claim.

B.

In count two, Grant alleges an ADEA retaliation claim against NCDOT. See id. at ¶¶ 30–37. The ADEA makes it unlawful:

> for an employer to discriminate against any of [its] employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified,

7

assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d); see Gomez-Perez v. Potter, 553 U.S. 474, 486–87 (2008); Laber, 438 F.3d at 432; Baqir v. Principi, 434 F.3d 733, 747–48 (4th Cir. 2006), abrogated on other grounds by Gross, 557 U.S. 167. Grant lacks direct evidence of retaliation and relies on the McDonnell Douglas framework.

To establish a prima facie case of retaliation under the ADEA, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Baqir, 434 F.3d at 747; accord Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto, 786 F.3d at 271; Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013).

Grant alleges that she "engaged in protected activity by complaining to [NCDOT] that she believed that the" April 18, 2022 psychological evaluation "was both unfair and motivated by discrimination based on her age." Am. Compl. ¶ 34; see EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005) ("[P]rotected oppositional activities may include staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities as well as complaints about suspected violations." (cleaned up)). After making that complaint, Grant alleges that NCDOT "punished" her with adverse employment actions. Am. Compl. ¶¶ 35–37. Viewing Grant's amended complaint in the light most favorable to her, Grant plausibly alleges that she engaged in protected "opposition" activity and promptly endured adverse employment actions. See Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) ("A plaintiff need not establish that the conduct she opposed actually constituted an [ADEA] violation. But a complainant must allege the predicate for a reasonable, good faith belief that the

8

behavior she is opposing violates the [ADEA]." (citations omitted)); see, e.g., Massaro v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 774 F. App'x 18, 22–23 (2d Cir. 2019) (per curiam) (unpublished); Buchhagen v. ICF Int'l, Inc., 545 F. App'x 217, 221 (4th Cir. 2013) (per curiam) (unpublished); Passer v. Am. Chem. Soc., 935 F.2d 322, 330–32 (D.C. Cir. 1991). Accordingly, Grant may proceed with her ADEA retaliation claim.

C.

In count three, Grant alleges an ADEA hostile work environment claim. See Am. Compl. ¶¶ 38–45. The court analyzes an ADEA hostile work environment claim under the same standard as a Title VII hostile work environment claim. See, e.g., Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998); Powell v. Nash Edgecombe Econ. Dev., Inc., No. 5:20-CV-562, 2021 WL 1736894, at *4 (E.D.N.C. May 3, 2021) (unpublished); Hill v. Sch. Bd. of Robeson Cnty., No. 7:18-CV-149, 2018 WL 5020220, at *3 (E.D.N.C. Aug. 31, 2018) (unpublished), report and recommendation adopted, 2018 WL 5019387 (E.D.N.C. Oct. 16, 2018) (unpublished). To demonstrate a hostile work environment claim under the ADEA, an employee must prove that (1) she experienced unwelcome conduct, (2) the conduct was based on her age, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 716 (4th Cir. 2024); Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 229 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto, 786 F.3d at 277; Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547

F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Evans v. Capitol Broad. Co., No. 5:23-CV-288, ___ F.Supp.3d ___, 2024 WL 535189, at *8 (E.D.N.C. Feb. 9, 2024). An employee also must show that her age was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on age, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-

10

Liberto, 786 F.3d at 277–78. The ADEA does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds, 629 F.3d at 385–86; Baqir, 434 F.3d at 746–47; see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on age. Id. at 82; see Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772–73 (4th Cir. 1997).

11

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

Grant alleges the following unwelcome conduct: (1) Hayworth "constantly yelled at and berated" her in front of other employees for reporting the unlocked desk drawer issues, (2) NCDOT ordered her to get a psychological evaluation, and (3) Hayworth told her to leave her job and caused her to miss work. Am. Compl. ¶¶ 41–43. Even viewing Grant's amended complaint in the light most favorable to her, Grant has not plausibly alleged that NCDOT's alleged conduct was sufficiently severe or pervasive enough to alter the conditions of employment and create an abusive working environment. See Breeden, 532 U.S. at 271–72; Oncale, 523 U.S. at 81–82; Guessous, 828 F.3d at 223-27; Boyer-Liberto, 786 F.3d at 277–81; Gilliam, 474 F.3d at 142–43; Soto v. Town of Rolesville, ___ F. Supp. 3d ___, 2024 WL 1546918, at *8 (E.D.N.C. Apr. 9, 2024); Ali v. WorldWide Language Res., LLC, ___ F. Supp. 3d ___, 2023 WL 5120224, at *12 (E.D.N.C. Aug. 9, 2023); Benjamin v. Sparks, 173 F. Supp. 3d 272, 286 (E.D.N.C. 2016), aff'd, 986 F.3d 332 (4th Cir. 2021). Grant also has not plausibly alleged that the alleged harassment was based on her age. Accordingly, the court dismisses Grant's ADEA hostile work environment claim.

## III.

In sum, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss [D.E. 7]. Plaintiff's ADEA retaliation claim may proceed.

SO ORDERED. This 30 day of May, 2024.

                                                        JAMES C. DEVER III
                                                        United States District Judge